UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA FOSTER., *et al.*, | Case No. 1:18-cv-50 HSO-JCG |
| Plaintiffs, | |
| vs. | |
| HUNT SOUTHERN GROUP, LLC FKA FOREST CITY SOUTHERN GROUP LLC, *et al.*, | |
| Defendants. | |

**DEFENDANTS' JOINT COMBINED MEMORANDUM IN SUPPORT OF
RESPONSE TO PLAINTIFFS' FOUR "MOTIONS FOR PARTIAL SUMMARY JUDGMENT"
(ORAL ARGUMENT REQUESTED)**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c), Defendants Forest City Residential Management, LLC ("FCRM"), Hunt Southern Group, LLC ("Southern Group") and Hunt MH Property Management, LLC ("Hunt MH") (collectively, "Defendants") hereby oppose each of Plaintiffs' four Motions for Partial Summary Judgment and Memoranda in Support filed May 10, 2019 (ECF #'s 207-208; 209-210; 211-212; and 213-214) ("Motions"). Specifically, the following responds to:

- Plaintiffs' Motion for Partial Summary Judgment – Implied Warranty of Habitability Exists as a Matter of Law (ECF # 207);

- Plaintiffs' Motion for Partial Summary Judgment – Attorney's Fees Appropriate Remedy Under Servicemembers Civil Relief Act (SCRA) (ECF # 209);

- Plaintiffs' Motion for Partial Summary Judgment – Punitive Damages Appropriate Remedy Under Servicemembers Civil Relief Act (SCRA) (ECF # 211); and

- Plaintiffs' Motion for Partial Summary Judgment – Federal Punitive Damages Claims Not Subject to State Law Cap (ECF # 213).

Though they are identified as "Motions for Partial Summary Judgment," Plaintiffs' Motions are not actual Rule 56 motions, but rather oddly-framed bench briefs on legal issues. Although each of Plaintiffs' four Motions recites the Rule 56 standard, there is not a single specific citation to the enormous quantity of evidence that is of record, consisting of dozens of depositions and thousands of pages of documents. Instead, without pointing to any of the materials specified in Rule 56(c) – depositions, documents, affidavits, admissions, interrogatory answers – Plaintiffs baldly request that the Court "find" that various legal propositions "exist as a matter of law." *See, e.g.*, ECF # 207 at 3 (Pltfs'. Mot. for Part. Summ. J. – Implied Warranty of Habitability Exists as a Matter of Law). Plaintiffs' four Motions fail to establish that they are entitled to partial judgment as a matter of law. Indeed, examining Plaintiffs' four Motions in conjunction with Defendants' pending separate motions for summary judgment underscores that Plaintiffs' claims fail as a matter of law, further negating Plaintiffs' four requests for these "findings."

## **LAW AND ARGUMENT**

A movant for summary judgment must identify "each claim or defense — or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility" of identifying "those portions of the record … which it believes demonstrate the absence of a genuine issue of material fact." *Sierra Club v. City of Jackson*, 136 F. Supp. 2d 620, 623 (S.D. Miss. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). As to issues on which the non-movant has the burden of proof, the moving party must "point to portions of the record that demonstrate an absence of evidence to support" the non-movant's claim or defense. *Id*. (citing *Celotex*, 477 U.S. at 323-24). Only then must the non-movant "designate 'specific facts'" showing that there is an issue for trial. *Id*. Summary judgment is appropriate only if "everything in the record demonstrates that no genuine issue of material fact exists." *Id*.

Here, Plaintiffs solely seek "findings" as a "matter of law" on issues on which *they* bear the burden of proof: the warranty of habitability under the federal Servicemembers Civil Relief Act ("SCRA"); attorney fees under the SCRA; punitive damages under the SCRA; and the amount of any such purported punitive damages given Mississippi's statutory punitive-damage cap. Plaintiffs have not identified any defense or pointed to any issue on which any Defendant even arguably has the burden of proof. Plaintiffs have not identified any portion of the record supporting their requested "findings." Nor have Plaintiffs pointed to any portions of the record demonstrating an absence of evidence supporting any defense of the Defendants. Rather they have submitted what are essentially bench briefs on select legal issues. Under these circumstances, as the non-movants, Defendants have no corresponding responsibility to come forward and designate specific facts showing there is an issue for trial. Rather, Plaintiffs have not met their burden of showing they are entitled to partial summary judgment as a matter of law, and the Court should deny their four Motions.

**I.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE IMPLIED WARRANTY OF HABITABILITY.**

Plaintiffs seek a finding that the "implied warranty of habitability" exists. ECF #'s 207-208. In support, Plaintiffs cite to (1) their Amended Complaint, (2) *Black's Law Dictionary* and (3) two Mississippi cases on the warranty of habitability. Even if taken at face value, these materials do not entitle Plaintiffs to the declaration they seek. Plaintiffs lack, and do not even attempt to point to, any facts that would demonstrate that any Defendant breached the warranty of habitability, let alone that their damages were proximately caused by such a breach. *See, e.g., Haley v. Ellis*, 414 F. Supp. 2d 613, 617-18 (S.D. Miss. 2005) (claim for breach of implied warranty of habitability requires plaintiff to prove harm and proximate causation).

Moreover, even if the warranty of habitability "exists," Plaintiffs' claim fails as a matter of law for the reasons stated in Defendants' separate Motions for Summary Judgment, and sum-

mary judgment should be granted in favor of Defendants. Unlike Plaintiffs, Defendants cited evidence in the record in their separate Motions for Summary Judgment to establish that there is no genuine issue of material fact, and that they are therefore entitled to judgment in their favor.

### A. The Implied Warranty of Habitability, if Any, Does Not Apply to FCRM or Hunt MH based on their Capacity as Agents.

In the first instance, any implied warranty of habitability that would even arguably apply would run solely between Plaintiffs and the owner or landlord of the privatized military housing at Keesler Airforce Base ("Keesler AFB"). *See* 49 Am Jur. 2d *Landlord and Tenant* § 442 ("The implied warranty of habitability creates for residential *landlords* a continuing duty during the lease term.") (emphasis added).[1] Neither FCRM nor Hunt MH was the owner or landlord of the leased property. FCRM was the agent of Southern Group, and Hunt MH succeeded FCRM as agent. *See* Foster-Hunt-Gen01-00005, att. as Ex. 1 (execution by "Forest City Residential Management, Inc., Agent for Owner, Forest City Southern Group, LLC"). This is a sufficient basis by itself to defeat Plaintiffs' Motion for Partial Summary Judgment and instead to entitle FCRM

---

[1] No Mississippi authority was located that expressly analyzes whether mere property managers have an independent duty under a warranty-of-habitability theory. For instance, in the most recent case in which the state court of appeals considered the warranty, it affirmed the grant of summary judgment to both the landlord and property manager in a wrongful death case arising from an apartment fire. *Mays v. Shoemaker Prop. Mgmt., LLC*, 246 So. 3d 72 (Miss. Ct. Ap. 2018). The court held that both defendants were entitled to judgment as a matter of law because the plaintiff was unable to prove proximate causation with the required expert opinion evidence (a lack that also infects Plaintiffs' case here). *Id*. at 76. The court did not separately analyze whether the property manager, as a mere agent, had any independent duty under a warranty-of-habitability theory – but it did cite and quote the state supreme court's 1999 ruling, that the implied warranty of habitability "requires a *landlord* to provide reasonably safe premises at the inception of a lease, and to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant…" 246 So. 3d at 76 (quoting *Sweatt v. Murphy*, 733 So. 2d 207, 210 (Miss. 1999) (emphasis added)). Similarly, in *Serrano v. Laurel Housing Authority*, 151 So. 3d 256 (Miss. Ct. App. 2014), in a case involving a fallen ceiling fixture, the court held that a housing authority authorized to manage subsidized housing projects under state statute had a statutory duty to provide safe housing for residents – but without any analysis of the application of the implied warranty of habitability to landlords or their agents. Cases such as these cannot be said to establish an independent duty under Mississippi law for property managers who are acting as mere agents of their principals, the owners.

and Hunt MH to judgment in their favor on this claim. (See FCRM's Mot. for Summ. J., ECF # 236 at 8-11, 21.)

> **B.    The Federal Enclave Doctrine Defeats Plaintiffs' Request for Partial Summary Judgment.**

As to all Defendants, Plaintiffs' motion fails for an additional reason. Keesler AFB was established as a federal enclave under the U.S. Constitution when the federal government acquired the base property from the State of Mississippi by condemnation between 1941 and 1950. *United States v. State Tax Comm'n*, 412 U.S. 363,371-72 (1973). Under this cession, for nearly eighty years, Keesler AFB has "constituted [a] federal island[] which no longer constitute[s] any part of Mississippi nor functions under its control." *Id*. at 376. This federal enclave doctrine – which Plaintiffs fail to address in their Motion for Partial Summary Judgment – is an additional basis that defeats Plaintiffs' Motion.

When "the United States acquires with the 'consent' of the state legislature land within the borders of that State … the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. United States*, 371 U.S. 245, 264 (1963). The significance of exclusive federal jurisdiction is that the power of Congress over federal enclaves "by its own weight bars *state* regulation without specific congressional action." *Id.* at 263 (emphasis added). Thus, "the laws and statutes applied to these locations must be supplied by the federal government, not the states." *Allison v. Boeing Laser Tech. Servs.*, 689 F. 3d 1234, 1237 (10th Cir. 2012) (citing *Pac. Coast Dairy v. Dep't of Ag. of Cal*., 318 U.S. 285, 294 (1943)). *See also Kasperzyk v. Shetler Security Servs., Inc.,* 2014 U.S. Dist. LEXIS 547, *18 (N.D. Cal. Jan. 3, 2014) (noting that in leasing property located in the Presidio in San Francisco, "the federal government interest is essentially that of a landlord," and applying federal enclave principles in determining that California Fair Employment and Housing Act did not apply to the plaintiff's claims based on economic injury).

As the central principle of the federal enclave doctrine is that "Congress has exclusive legislative authority over these enclaves," *Allison*, 689 F.3d at 1237, what is the effect on areas of law that are traditionally the responsibility of states – such as landlord-tenant law? The answer is that "state laws that existed at the time that the enclave was ceded to the federal government remain in force." *Id*. But since a state "may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States, *only state law existing at the time of the acquisition remains enforceable, **not subsequent laws***." *Id*. (emphasis added; citing *Paul*, 371 U.S. at 268).

There is no apparent indication that the State of Mississippi reserved the right to legislate with respect to Keesler AFB when it ceded the property to the federal government in the 1940s and 1950s. Thus, state law existing at that time remains enforceable, but not subsequent law. Significantly, as Plaintiffs recognize, the warranty of habitability became part of Mississippi's common law only in 1991, when it was adopted by the state supreme court in *O'Cain v. Harvey Freeman & Sons*, 603 So. 2d 824 (Miss. 1991) (cited in Mot. for Part. Summ. J. at 2). Before that decision, Mississippi "unquestioningly applied *caveat emptor* to landlord-tenant relationships." *Moorman v. Tower Mgmt. Co.*, 451 F. Supp. 2d 846, 849 (S.D. Miss. 2006) (quoting *O'Cain*, 603 So. 2d at 832).

The federal enclave doctrine signifies that the implied warranty of habitability does not apply. This would hold true as to Southern Group and even if FCRM or Hunt MH could be deemed to have any independent duties as a mere agents of the owner as to the habitability of the leasehold (which they cannot). These additional grounds defeat Plaintiffs' request for a "finding" that the implied warranty of habitability "exists," or applies here as a matter of law.

## II. PLAINTIFFS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES OR ATTORNEY'S FEES UNDER THE SCRA.

Two of Plaintiffs Motions are based on the Servicemembers Civil Relief Act. One Motion seeks a finding that attorneys' fees are an "appropriate remedy" under the SCRA (ECF # 209 at 1, 3); the other Motion similarly seeks a finding that punitive damages are an "appropriate remedy" and "recoverable" under the SCRA (ECF # 211 at 1, 7).

Again, Plaintiffs cite no evidence from the voluminous record to support their two Motions under the SCRA. Instead, they merely point (without even any specific citation) to their allegations of "a violation of § 3951 of the SCRA." *See* ECF # 210 at 3; ECF # 212 at 3. Section 3951 of the SCRA solely prohibits "landlords" or others "with paramount title" from evicting service members without court order from certain housing under certain circumstances. *See* 50 U.S.C. § 3951(a)(1).

Although the language of the SCRA deals with attorneys' fees and punitive damages under certain circumstances, any such recovery would require in the first instance that the claimant "prevail" in order to be entitled to fees (50 U.S.C. § 4042(b)) and that "other law" apply in order to be entitled to punitive damages (50 U.S.C. § 4043).

Here, there have been no such threshold determinations, and the Court must therefore deny these two Motions as premature. *See EEOC v. IPS Indus.*, 899 F. Supp. 2d 507, 526 (N.D. Miss. 2012) (denying plaintiff's cross-motion for partial summary judgment as to punitive damages as premature; "The court finds this inquiry to be premature until a jury returns a verdict for punitive damages, not to mention liability."); *Padilla v. Wells Fargo Home Mortg., Inc.* (*In re Padilla*), 379 B.R. 643, 668-69 (Bankr. S.D. Tex. 2007) (denying as premature debtor's motion for summary judgment on its claim against lenders for attorneys' fees; "Because the merits of the underlying breach of contract claim have not been determined, summary judgment is inappropriate on this issue.").

Notwithstanding their discussion of inapposite cases under the Fair Housing Act and other statutes, Plaintiffs have failed to provide the Court with any basis on which they are entitled to summary judgment. Defendants have in fact proven that the Plaintiffs are not. Again, in their separate Motions, Defendants have confirmed with citations to the record that Plaintiffs will not be able to prevail on any substantive claims that could eventually entitle them to punitive damages or attorneys' fees.[2] The Court should deny Plaintiffs' two motions under the SCRA.

### III. PLAINTIFFS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO MISSISSIPPI'S STATUTORY PUNITIVE-DAMAGE CAP.

Plaintiffs assert (in a two-page memorandum) that the Court should "find" that Mississippi's punitive-damages cap does not apply to awards under the SCRA. (ECF # 214 at 2-3.) Section 11-1-65(3)(a) of the Mississippi Code caps at specified amounts punitive damages "[i]n

---

[2] Plaintiffs cannot plausibly assert that Defendants *actually* evicted them, and thus they assert in broad-brush manner only that "Defendants" violated the SCRA by *constructively* evicting them. (*Id.* at ¶ 55.) In the first instance, no Defendant constructively evicted Plaintiffs. *See* FCRM Mem. in Supp. of Mot. for Summ. J., ECF # 236 at 28-29; Hunt Defendants' Mem. in Supp. of Mot. for Summ. J., ECF # 238 at 29-31.

Second, Plaintiffs point to no authority applying the SCRA to a claim for constructive eviction – because there is none. In interpreting the analogous provision of the predecessor to the SCRA, the Soldiers' and Sailors' Civil Relief Act, it has been held that the term "eviction" refers to dispossession of a tenant *by a landlord*, and "not to any disturbance of a tenant's right to possession and quiet enjoyment of the premises by a third party." *Arkless v Kilstein*, 61 F. Supp. 886, 888 (E.D. Pa. 1944). Thus, the SCRA does not apply to any alleged conduct by FCRM or Hunt MH.

Third, Plaintiffs will not be entitled to punitive damages under Mississippi law even in the unlikely event that they prevail on their claims against Defendants. There is no question that under Miss. Code § 11-1-65, Plaintiffs must meet the highest evidentiary standard in civil law – "clear and convincing" – in order to recover punitive damages. This "is such a high standard that even the overwhelming weight of the evidence does not rise to the same level." *Golden Triangle Vein Ctr. v. Total Body Contouring, Inc.*, 2017 WL 1093203 at *4 (N.D. Miss. Mar. 23, 2017) (quoting *Moran v. Fairley*, 919 So. 2d 969, 975 (Miss. Ct. App. 2005). The wrongs to which punitive damages are applicable include "injuries inflicted in the spirit of wanton disregard for the rights of others," *Bradford v. Schwartz*, 936 So. 2d 931 (Miss. 2006), or that otherwise have an "element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of [Plaintiffs]." *Fowler Butane Gas Co. v. Varner*, 141 So. 2d 226, 233 (Miss. 1962). Plaintiffs have no evidence, let alone clear and convincing evidence, that any Defendant's conduct evinced wanton or ruthless disregard, aggression, insult, or malice toward Plaintiffs.

any civil action where an entitlement to punitive damages shall have been established under applicable laws."

In support of their request for a "finding" on the applicability of the cap, Plaintiffs cite a single case, *Williams v. Riley*, 536 Fed. App'x 468 (5th Cir. 2013). There, the court reviewed the jury's verdict in a §1983 action that also involved state law claims. The jury found one of the defendants liable for violating both federal and state law and awarded punitive damages against that defendant; defendants did not challenge the relevant jury instruction. Under these circumstances, the court of appeals rejected the defendant's argument that Mississippi's punitive damages cap should apply, noting that "[t]hat there is no federal damage cap on punitive damage awards." *Id*. at 470. The *Williams* court's statement is devoid of any citation to supporting authority; moreover, no subsequent case has cited *Williams* for any proposition.[3]

As with their request for a "finding" on the issue of punitive damages, the Court should deny Plaintiffs' request that the Court rule on Mississippi's punitive-damage cap in the first instance because it is premature: there has been no determination that any Defendant is liable for punitive damages (nor could there be, given the undisputed facts and the clear-and-convincing evidentiary standard). *See IPS Indus*., 899 F. Supp. 2d at 526; *Padilla*, 379 B.R. at 668-69.

## CONCLUSION

For the foregoing reasons, the Court should deny each of Plaintiffs' four Motions for partial summary judgment.

---

[3] Indeed, the statement in *Williams* that Plaintiffs rely on is incorrect: several federal statutes provide for damage-award caps. *See, e.g., Jackson v. East Bay Hosp*., 980 F. Supp. 1341, 1346 (federal Emergency Medical Treatment and Active Labor Act incorporates state law damage caps); *Aguilar v. United States*, 920 F.2d 1475, 1479 (9th Cir. 1990) (discussing and applying Federal Tort Claims Act's incorporation of state-law limits on liability).

Respectfully submitted,

*/s/ Alison O'Neal McMinn*
Joshua J. Metcalf, MSB#100340
Alison O'Neal McMinn, MSB#101232
FORMAN WATKINS & KAUTZ LLP
210 East Capitol Street, Suite 200
Jackson, MS 39201
Telephone: (601) 960-8600
Facsimile: (601) 960-8613
Joshua.Metcalf@formanwatkins.com
Alison.McMinn@fortnanwatkins.com


*/s/ William J. Hubbard*
William J. Hubbard (admitted *pro hac vice*)
Gregory P. Feldkamp (admitted *pro hac vice*)
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
bill.hubbard@thompsonhine.com
gregory.feldkamp@thompsonhine.com

*Attorneys for Defendant*
*Forest City Residential Management, LLC*

*/s/ Walter H. Boone*
Walter H. Boone, MSB#8651
Jennifer J. Skipper, MSB#100808
BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, MS  39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
wboone@balch.com
jskipper@balch.com

*Attorneys for Defendant*
*Hunt Southern Group, LLC and Hunt HM*
*Property Management, LLC*

**CERTIFICATE OF SERVICE**

This is to certify that I, Alison O'Neal McMinn, have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all ECF participants.

THIS, the 14th day of June, 2019.

/s/ *Alison O'Neal McMinn*
Alison O'Neal McMinn, MSB# 101232
