# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

JOSHUA FOSTER, *et al*.,        )       Case No. 1:18-cv-50 HSO-JCG

                        )

        Plaintiffs,      )

                        )

vs.                      )

                        )

HUNT SOUTHERN GROUP, LLC FKA   )
FOREST CITY SOUTHERN GROUP LLC,  )
*et al*.,                    )

                        )

        Defendants.     )

---

### DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF RESPONSE TO PLAINTIFFS' MOTION TO STRIKE THE OPINIONS AND TESTIMONY OF RIMKUS CONSULTING GROUP, INC./ALLISON STOCK AND JEFFREY COOK OR, IN THE ALTERNATIVE, FOR DAUBERT HEARING [Doc. No. 222]

Defendants Hunt Southern Group, LLC, Hunt MH Property Management, LLC and Forest City Residential Management, LLC (collectively, "Defendants") hereby oppose "Plaintiffs' Motion to Strike the Opinions and Testimony of Rimkus Consulting Group, Inc./Allison Stock and Jeffrey Cook[1] or, in the Alternative, for Daubert Hearing." ("Motion") (Doc. No. 222, 5/10/19.)

### INTRODUCTION

Toxicologist and epidemiologist Allison L. Stock, Ph.D., MPH, MS[2] and certified industrial hygienist Jeff T. Cook[3] issued an initial expert report examining the Plaintiffs' claims

---

[1] Plaintiffs' Motion references "Rimkus" opinions. Rimkus is the company that employs Dr. Allison Stock and Mr. Jeffrey Cook. The opinions and reports offered in this case are Dr. Stock's and Mr. Cook's, not Rimkus's.

[2] Dr. Stock has more than 24 years of experience in the fields of toxicology, epidemiology, forensics and environmental health, including her position as former Epidemic Intelligence Officer within the U.S. Centers for Disease Control and Prevention where she led several large investigations related to indoor air quality and purported mold-related health and exposure issues.

of health effects due to alleged mold exposure from their residence located at 145 McNarney Drive in Biloxi, Mississippi, where they lived from July 12, 2013 to June 20, 2018. ("Expert Report," attached hereto as Exhibit 1.) The Expert Report appropriately focused on whether there is any evidence that the Plaintiffs (i) were exposed to dangerous levels of mold at their residence, and (ii) experienced any health effects caused by any alleged dangerous exposure. (*See id.*) The report carefully analyzed the mold tests that Plaintiffs requested for their property, any mold or moisture-related maintenance request that Plaintiffs made, and Plaintiffs' medical records. (*Id.*) Dr. Stock and Mr. Cook concluded, among other things, that:

1.   the mold test performed at 145 McNarney Drive on January 2, 2017, did not show that the Fosters were exposed to "an unreasonable risk of exposure to indoor mold relative to the outside environment";

2.   the Fosters' alleged medical issues were not caused by exposure to mold in the Fosters' residence because medical records show that the Fosters' health issues pre-dated their occupancy at 145 McNarney Drive and were determined to be related to other causal agents by the physician;

3.   the Fosters' residence did not pose an increased level of risk from mold contamination based upon scientific literature, medical records, and case documents;

4.   Defendants timely and appropriately responded to any maintenance request related to moisture or mold.

(*Id.* at 3-4.)[4]

Following their initial Expert Report, Dr. Stock and Mr. Cook rendered additional opinions in two supplemental reports dated January 14, 2019 ("Supplemental Report No. 1"),

---

[3] Mr. Cook is a certified industrial hygienist, certified safety professional, and a Texas-licensed mold assessment consultant who has 26 years of experience in the fields of safety and health practice, including investigation of over 500 claims of mold, bacteria, sewage, water damage, chemical exposure and injuries.

[4] Both Dr. Stock and Mr. Cook were deposed about their opinions: Mr. Cook was deposed on March 19, 2019, and Dr. Stock was deposed on April 4, 2019. Dr. Stock confirmed that she holds each of the four opinions in the Expert Report, and Mr. Cook confirmed that he holds opinions 1 and 4, and 3 with respect to the mold testing.

and January 18, 2019 ("Supplemental Report No. 2"). In Supplemental Report No. 1, Dr. Stock and Mr. Cook both opine that:

1. the mold sampling protocol and sample interpretation for the Fosters' residence is suspect;

2. Mr. Ed Williams (the mold technician who tested the home) is not qualified to opine about the amount of mold in the Foster residence and potential health effects;

3. Mr. Williams's inspection and photographs of the Foster residence confirmed that there were only limited indicators of possible microbial growth in the residence and no evidence of a sufficient amount of mold to pose an unreasonable risk to the residents.

(Supplemental Report No. 1, attached hereto as Exhibit 2.)

In Supplemental Report No. 2, Dr. Stock opines that:

1. Dr. Goldstein is not qualified to render opinions on whether there was an increased level of mold in the Foster residence and any potential health effects caused by the alleged mold;

2. scientific literature does not support Dr. Goldstein's conclusions that mycotoxins are harmful, and Dr. Goldstein ignores regulatory standards and scientific literature;

3. scientific literature does not support Dr. Goldstein's claims regarding adverse health endpoints associated with mycotoxin and mold exposures.

(Supplemental Report No. 2, attached hereto as Exhibit 3.)[5]

The Expert Report and Supplements are appropriately *Plaintiff-specific*, focusing on the *Fosters*, the *Fosters'* residence, the *Fosters'* alleged exposure to mold, and the *Fosters'* alleged health issues related to the alleged exposure. (*See id.*) In fact, the Expert Report addresses Joshua, Jessica, Mikayla and Gabriella Foster individually. (*See id.* at 9-13.) As this Court has previously recognized in the context of Plaintiffs' overbroad discovery requests, "The relevant

---

[5] Based upon their differing specialties, Dr. Stock confirmed that she holds each of the opinions in Supplemental Report No. 2, and Mr. Cook confirmed that he supports opinion 1 with respect to Dr. Goldstein's lack of qualifications as an industrial hygienist.

inquiry in this case is whether the Cookseys were exposed to mold at their residence and whether mold exposure caused them injuries." (*Cooksey, et al. v. Hunt Southern Group, LLC, et al.*, No. 1:18-cv-00049-LG-RHW, Doc. No. 144, S.D. Miss. 11/7/18.)

As an initial matter, Plaintiffs do not move to exclude the opinions contained within the two supplemental reports.[6] As to the initial Expert Report, Plaintiffs argue that the opinions are not reliable because they are not based upon sufficient data. Alternatively, Plaintiffs argue that the Court should exclude testimony regarding (1) the timeliness of Defendants' response to maintenance requests; (2) mold tests; and (3) the lack of causal connection between Plaintiffs' alleged mold exposure and health issues.

Plaintiffs' Motion should be denied because the opinions of Dr. Stock and Mr. Cook are based upon sufficient data, including medical records, mold tests, and maintenance history among other data.[7] Plaintiffs do not cite a single case holding that a comprehensive review of medical records, maintenance requests, case documents, and mold tests is "insufficient data" under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Similarly, Plaintiffs' attempts to exclude particular opinions also fail because the opinions are derived from Dr. Stock and Mr. Cook's review of the Plaintiffs' medical records, mold tests, maintenance requests and case materials, which are sufficient data under a *Daubert* analysis.

Plaintiffs do not contest that Dr. Stock and Mr. Cook are experts who are eminently qualified to render the opinions in their report. Plaintiffs do not contest that Dr. Stock and Mr. Cook comprehensively analyzed the Plaintiffs' medical records, mold tests, maintenance

---

[6] Because Plaintiffs make no argument with regard to the supplemental reports, any reference to Dr. Stock and Mr. Cook's report in Plaintiffs' Motion will relate to the initial report only. Plaintiffs have conceded that the supplemental reports are reliable and relevant by excluding them from their challenge.

[7] The report includes a section entitled "Basis of Report" which itemizes the voluminous materials that Dr. Stock and Mr. Cook reviewed.

requests, and case materials. Rather, Plaintiffs are dissatisfied with the conclusions that Dr. Stock and Mr. Cook reached in this case. Disagreement with ultimate opinions is simply no basis to exclude their opinions in whole or part, and Plaintiffs' Motion should be denied.

## I.       Admissibility of Expert Testimony

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, an expert must be qualified to render an opinion, and her opinion must be scientifically reliable and sufficiently tied to the facts of the case. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589.

## II.      Dr. Stock and Mr. Cook's Opinions Are Based Upon Sufficient Data, Including Foster-Specific Maintenance Requests, Mold Tests, and Medical Records.

Dr. Stock and Mr. Cook carefully analyzed the Plaintiffs' medical records, mold tests, and maintenance requests. (*See* Ex. 1.) Plaintiffs do not cite a single case holding that review of such data is insufficient under a *Daubert* analysis – or, for that matter, Plaintiffs do not cite any legal authority at all in this section of their memorandum. (Pls.' Mem. at 5-8, Doc. No. 223, 5/10/19.) Neither the Federal Rules of Evidence nor *Daubert* require that an expert consider "all" the evidence in forming their opinions, only sufficient facts or data so that their conclusions are based on more than speculation or conjecture. *See United States v. John Stapp, Inc.*, 448 F. Supp. 2d 819, 826 (S.D. Tex. 2006) ("Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation."); *Dodge v. Cotter*

*Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("While expert opinions must be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation, absolute certainty is not required.") (internal alterations and quotation marks omitted); *Rich v. City of Savannah*, No. 1:02-1222 T/P, 2005 WL 6739798, at *3 (W.D. Tenn. Aug. 25, 2005) ("Rule 702, however, does not require that an expert consider all relevant evidence. It only requires the expert's testimony to be based on sufficient facts and data to make the testimony reliable.").

Plaintiffs argue that Dr. Stock and Mr. Cook's opinions are unreliable because they did not review a laundry list of documents, including a 2012 consultant report[8] by other Rimkus employees. (Pls.' Mem. at 5-8.) However, that report pertained to four properties other than Plaintiffs'; Plaintiffs do not suggest how the 2012 report or any of the various documents attached to their Motion show that Dr. Stock and Mr. Cook's opinions lack factual support. Those documents do not show that there was mold at 145 McNarney Drive during or prior to the Plaintiffs' occupancy (because they do not show such), and it is not the Court's responsibility to hunt through exhibits in search of evidence to support Plaintiffs' Motion. *Cf. Washington v. Rodriguez*, 2019 U.S. Dist. LEXIS 34490, *9 (S.D. Miss. Jan. 7, 2019) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Salmon v. Miller*, 951 F. Supp. 103, 108 n.1 (E.D. Tex. 1996) ("The Fifth Circuit has clearly held that the court is not required to sift through exhibits to find summary judgment evidence to support a party's position. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).") Dr. Stock and Mr. Cook need not review documents related to other residences or other tenants to form opinions about the Plaintiffs' alleged

---

[8] The 2012 Report is based upon an inspection of four residences on Keesler Air Force Base, none of which were Plaintiffs' residence. (Ex. C to Pls.' Mot. at FCRM00000938.)

exposure and health issues. (*See* Order, *Cooksey, et al. v. Hunt Southern Group, LLC, et al.*, No. 1:18-cv-00049-LG-RHW, Doc. No. 144, S.D. Miss. 11/7/18.)

Plaintiffs complain that Dr. Stock and Mr. Cook did not interview Plaintiffs or Defendants and did not inspect Plaintiffs' residence.[9] (Pls.' Mem. at 7-8.) Plaintiffs' counsel conducted extensive discovery, including deposing several representatives of each Defendant, and failed to identify in their Motion any meaningful excerpts from these depositions that bear upon the Plaintiffs' alleged mold exposure and health issues. Plaintiffs concede that Dr. Stock and Mr. Cook analyzed "maintenance reports for the time period in which Plaintiffs resided in the subject property." (Pls.' Mem. at 8.) The Plaintiffs' occupancy is not just a "snapshot," (*id.*); it is the time period relevant to the Plaintiffs' claims. (*See* Order, *Cooksey, et al. v. Hunt Southern Group, LLC, et al.*, No. 1:18-cv-00049-LG-RHW, Doc. No. 144, S.D. Miss. 11/7/18) ("The relevant inquiry in this case is whether the Cookseys were exposed to mold at their residence and whether mold exposure caused them injuries.") An inspection of Plaintiffs' residence in 2019 would not be relevant to the opinions offered by Dr. Stock and Mr. Cook. Plaintiffs conceded that they have been provided with the history of maintenance requests at Plaintiffs' residence prior to the Plaintiffs' occupancy. (Pls.' Mem. at 7, Ex. O.) However, they neglect to inform the Court that none of the previous residents made any maintenance calls regarding mold or mildew at the Foster residence, and the Plaintiffs are unable to point to anything that would support their claims.

Plaintiffs simply have no factual or legal basis to claim that the Expert Report is based upon insufficient data. Their Motion should be denied.

---

[9] Plaintiffs' expert, Paul Goldstein, had done neither of these before issuing his opinions. Plaintiffs' construction expert, Jodi Morgan, also had done none of these for this property. If that is the basis of exclusion then Plaintiffs' experts should be excluded and the case should be dismissed.

**III.    Just As Dr. Stock and Mr. Cook's Opinions Are Collectively Based Upon Sufficient Data, Their Particular Opinions Are Also Based Upon Sufficient Data.**

Conceding that the Court is unlikely to exclude the opinions of Dr. Stock and Mr. Cook in their entirety, Plaintiffs urge the Court to exclude particular opinions. However, Plaintiffs' arguments are redundant, unsupported by any legal authority, and fail for the same reasons that the Expert Report as a whole is admissible: the particular opinions are based upon sufficient data, including the Plaintiffs' maintenance requests, mold tests, and medical records.

**A.    Dr. Stock And Mr. Cook's Opinion That Defendants Timely Responded To The Plaintiffs' Maintenance Requests Is Relevant And Admissible.**

Dr. Stock and Mr. Cook analyzed the Plaintiffs' maintenance requests related to the alleged presence of mold and Defendants' response to those requests and determined that Defendants' response was timely, reasonable and consistent with guidance provided by the U.S. Environmental Protection Agency and World Health Organization. (Ex. 1 at 5-7.)

Strangely, Plaintiffs claim that the timeliness of Defendants' response is irrelevant because Plaintiffs' causes of action are "based entirely upon the condition of the subject property before Plaintiffs ever moved in." (Pls.' Mem. at 8.) Plaintiffs further state that "[a]ny opinion concerning Defendants (sic) actions during the period in which Plaintiffs lived in the subject property will only serve to confuse and mislead the jury." (*Id.* at ¶ 19.) Plaintiffs assert that "[t]he only opinion that would help the jury would be an opinion that Defendants acted timely to cure the moisture and mold issues before Plaintiffs ever moved in therefore relieving them of any obligation to disclose the known latent defect to Plaintiffs and evidencing that Defendants were renting a habitable property to Plaintiffs." (*Id.*)

First, this Court should take these statements made by Plaintiffs' counsel as judicial admissions. *Purgess v. Shamrock*, 33 F.3d 134, 144 (2d Cir. 1994) (holding that a trial court

may hold statements by an attorney or by a party in a brief as binding judicial admission of fact); *see also City Nat. Bank v. U.S.*, 907 F.2d 536, 544 (5th Cir. 1990). The timeliness and reasonableness of Defendants' response to the Plaintiffs' maintenance requests was put directly in issue by Plaintiffs' claims in their Amended Complaint. (*See* Amended Compl. at ¶ 28(C), (E), (K), 34(E), 48, 51, 53.) The purported untimely or inadequate responses to maintenance requests was Plaintiffs' only basis for suing property manager defendants Forest City Residential Management, LLC and Hunt MH Property Management, LLC. By disclaiming any claim based upon the condition of the property during the Plaintiffs' occupancy or upon Defendants' response to Plaintiffs' maintenance requests, both Forest City Residential Management, LLC and Hunt MH Property Management, LLC should be dismissed from this action.

Second, Plaintiffs point to no document or prior maintenance history for the Subject Property which would show there was a dangerous condition at Plaintiffs' residence before Plaintiffs moved in. There is no reference because there is no proof. There were no prior calls regarding possible mold. There was no mold. There was no dangerous condition. Plaintiffs argue that "Rimkus has never inspected the Subject Property which alone creates a flaw in their methodology and is contrary to the deposition of Jeff Cook who testified not only that a visual inspection is necessary to determine whether mold is hazardous but also to determine whether a property is habitable." (Pls.' Mem., ¶ 19.) In this case, multiple people, including the Plaintiffs, visually inspected the property prior to Plaintiffs beginning residency. Plaintiffs affirmed, via the lease agreement, that they had "examined the Premises and [are] satisfied with its physical condition, order and repair [accepting] the Premises 'as is'…" (*See* Lease Agreement at ¶ 6, attached hereto as Exhibit 4.)

Plaintiffs also argue that the timeliness of the response is irrelevant if it is unaccompanied by an opinion regarding "the quality and effectiveness of the service rendered." (Pls.' Mem. at 8-9.) As Dr. Stock and Mr. Cook note, Defendants' response is "consistent with the guidance provided by the U.S. Environmental Protection Agency (EPA) and the World Health Organization (WHO)," (Ex. 1 at 4), and "reasonable to mitigate a possible risk of elevated mold exposure." (*Id.* at 7.) They further explain that the "reported maintenance response of simple cleaning and removal was appropriate." (*Id.* at 6.) In other words, Defendants' response was both timely and reasonable. Plaintiffs, on the other hand, have not identified a single expert to opine that Defendants breached any duty of care.

**B.      Dr. Stock And Mr. Cook's Opinion That The Plaintiffs' Mold Tests Do Not Indicate An Elevated Level Of Risk From Mold Exposure Is Relevant And Admissible.**

Dr. Stock and Mr. Cook analyzed the reports and results of the mold test that the Plaintiffs' commissioned in January 2017 and concluded: "The Foster's residence did not pose an unreasonable risk of exposure to indoor mold relative to the outdoor environment. The concentrations and genera found in the residence indoor air are similar to or less than those found in non-complaint buildings." (Ex. 1 at 9.) The mold test is the very basis of the Plaintiffs' claims. (*See* Amended Compl. ¶¶ 20, 25.)

Now unhappy with the results of the mold tests, the Plaintiffs attempt to discredit *their own mold tests* as simply a "snapshot" that is not "representative or indicative" of the conditions within Plaintiffs' residence throughout the Plaintiffs' occupancy. (Pls.' Mem at 10.) The Plaintiffs' disavowal of their own mold tests leaves them without evidence of any alleged mold exposure let alone evidence that such exposure caused their medical issues. Dr. Stock and Mr. Cook examined the Plaintiffs' purported evidence, and determined that it does not support their

claims: "The Foster's residence at 145 McNarney Drive did not pose an unreasonable risk of exposure to indoor mold relative to the outside environment." (Ex. 1 at 3.) The Fifth Circuit has expressly allowed such "counterpoint" evidence. *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009) (holding that expert could "tell the jury that [the plaintiff's expert's] inferential leap was unsupported" by the scientific literature).

Significantly, it is *Plaintiffs' burden* to show exposure to mold in their home and resulting injury. Plaintiffs' criticism of their own mold tests underscores their inability to prove their claims. Dr. Stock and Mr. Cook's unquestioned expertise in the analysis of mold test reports is necessary to assist the jury in interpreting the results of the reports as well as recognizing the flaws and shortcomings of the methodology and documentation related to the mold tests, which Plaintiffs apparently now acknowledge to some degree.

**C.      Dr. Stock's Conclusion That Plaintiffs' Medical Records Show That The Health Issues Pre-Dated Plaintiffs' Alleged Mold Exposure And Are Related To Other Causal Agents Is Admissible.**

Dr. Stock analyzed Plaintiffs' medical records and purported health issues and concluded that the health issues reported by the Plaintiffs as being caused by mold: (i) have no association with mold exposure as reported in the scientific literature; (ii) pre-existed their occupancy at 145 McNarney Drive; and/or (iii) were associated with other causal agents by their physicians. (Ex. 1 at 9-13.)

Despite Dr. Stock's detailed analysis of particular medical records and scientific literature – there are 30 footnote citations to various records in the Expert Report – Plaintiffs argue that the analysis is nothing more than an *ipse dixit*[10] expert opinion, (Pls.' Mem. at 12-13), an argument

---

[10] *Ipse dixit* (Latin for "he said it himself") is an assertion without proof. *See General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

that is false on the face of the Expert Report. (Tellingly, this misapplication of *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) is Plaintiffs' only attempt throughout the entire argument section of their memorandum to apply any legal authority in support of their arguments.) A more precise example of *ipse dixit* is Plaintiffs' bald assertion that the Plaintiffs experienced "clear, documented mold exposure" at their residence. (Pls.' Mem. at 12.) Plaintiffs have conducted extensive discovery, and they are unable to cite a single source for that statement, which is the underlying premise of every one of their claims. (*See id.*)

There is no factual or legal basis to preclude Defendants from presenting the testimony of Dr. Stock and Mr. Cook. There is no factual basis offered in Plaintiffs' argument to support a *Daubert* hearing. What Plaintiffs' Motion elucidates is their complete lack of evidence of any dangerous mold exposure, any breach of duty by these Defendants, and causation. Based upon the statements made in Plaintiffs' brief, the Court should dismiss Hunt MH and Forest City Residential Management because Plaintiffs have disclaimed any liability based upon maintenance responses during Plaintiffs' residency. Similarly, the Court should dismiss this case based upon Plaintiffs' admissions that their own mold tests do not show any dangerous conditions within their residence.

## CONCLUSION

The Court should deny in its entirety "Plaintiffs' Motion to Strike the Opinions and Testimony of Rimkus Consulting Group, Inc./Allison Stock and Jeffrey Cook or, in the Alternative, for Daubert Hearing." Dr. Stock and Mr. Cook have appropriately examined relevant Plaintiff-specific evidence, including maintenance requests, mold tests, and medical records, upon which they have formed their opinions. Their qualifications are unchallenged, and Defendants have the right to present the testimony of Dr. Stock and Mr. Cook to a jury.

Moreover, based upon the statements and arguments offered by Plaintiffs, the case should be dismissed.

Respectfully submitted,

/s/ Alison O'Neal McMinn
Joshua J. Metcalf, MSB#100340
Alison O'Neal McMinn, MSB#101232
FORMAN WATKINS & KAUTZ LLP
210 East Capitol Street, Suite 200
Jackson, MS 39201
Telephone: (601) 960-8600
Facsimile: (601) 960-8613
Joshua.Metcalf@formanwatkins.com
Alison.McMinn@fortnanwatkins.com


/s/ William J. Hubbard
William J. Hubbard (admitted *pro hac vice*)
Gregory P. Feldkamp (admitted *pro hac vice*)
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, OH 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
bill.hubbard@thompsonhine.com
gregory.feldkamp@thompsonhine.com

**Attorneys for Defendant**
**Forest City Residential Management, LLC**

/s/ Walter H. Boone
Walter H. Boone, MSB#8651
Jennifer J. Skipper, MSB#100808
BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, MS  39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
wboone@balch.com
jskipper@balch.com

**Attorneys for Defendant**
**Hunt Southern Group, LLC and Hunt HM**
**Property Management, LLC**

## CERTIFICATE OF SERVICE

This is to certify that I, Alison O'Neal McMinn, have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all ECF participants.

THIS, the 14th day of June, 2019.

/s/ Alison O'Neal McMinn
Alison O'Neal McMinn, MSB# 101232